1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7               FOR THE DISTRICT OF ARIZONA

8

9    Luis Cano-Mendoza,                    No. CV-13-01442-SRB (BSB)
     a.k.a. Leonel Cano-Mendoza
10                                          **REPORT AND**
                  Petitioner,              **RECOMMENDATION**
11
     v.
12
     United States of America
13
                  Respondent.
14

15         Luis Cano-Mendoza (Petitioner) has filed a Petition for Writ of Error *Coram*

16   *Nobis* pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  (Doc. 1.)  The United States

17   (Respondent) has filed a response.  (Doc. 7.)  Petitioner has not filed a reply and the time

18   to do so has passed.  As set forth below, the Petition should be denied because Petitioner

19   has not established the requirements for *coram nobis* relief.

20   **I.     Petitioner's Claims of Fundamental Error in the 1995 Criminal Matter.**

21         Petitioner argues that this Court should find that fundamental error occurred in the

22   1995 criminal matter before this Court, *United States v. Leonel Cano-Mendoza,* CR 95-

23   00032-MS, in which he pleaded guilty to entering the United States without inspection, a

24   misdemeanor, in violation of 8 U.S.C. § 1325(a).  (Doc. 1 at 10, Exs. C and D.)[1]

25   Petitioner asserts that he was convicted as Leonel Cano-Mendoza, which he states is his

26   _____

27         [1]  Exhibits C and D to the Petition are the docket sheets for the complaint and the
     information filed against Petitioner in the 1995 criminal matter, *United States v. Leonel
     Cano-Mendoza,* 95-MJ-04024-SLV-1, and CR 95-00032-MS-MS-1.  (Doc. 1, Exs. C and
28   D.)  Petitioner attached his exhibits to his Petition and did not file them as separate
     documents in CM/ECF.

1   brother's name, and that he was prejudiced because if the matter had proceeded against

2   him under his true name, Luis Cano-Mendoza, his status as a legal permanent resident

3   (LPR) would have precluded the "illegal entry" charge.  (Doc. 1 at 11.)  Specifically,

4   Petitioner argues that his Sixth Amendment rights were violated because his attorney

5   failed to investigate his true identity and determine his immigration status.  (*Id.* at 8.)  He

6   also argues that the government violated his Fifth Amendment due process rights by

7   prosecuting him for illegal entry because it knew or should have known he had LPR

8   status.  (*Id.* at 10.)  Therefore, Petitioner asserts that his 1995 conviction is invalid and

9   should be "dismissed."  (*Id.* at 11.)

10        In response, Respondent argues that Petitioner is not entitled to *coram nobis* relief

11   because he has not demonstrated good reason for the eighteen-year delay in challenging

12   his conviction and sentence, other remedies exist, and Petitioner has not established

13   fundamental error because he was properly convicted in the 1995 matter.  (Doc. 7 at 4-5.)

14   Respondent argues that Petitioner's assertion that he was an LPR in 1995 is immaterial

15   because such status would not have precluded the charge for entering without inspection.

16   (Doc. 7 at 5.)  The Court considers these issues below in Section III, after discussing

17   Petitioner's underlying criminal conviction.

18   **II.    Petitioner's 1995 Misdemeanor Conviction under § 1325(a)**

19        On January 17, 1995, Immigration and Naturalization Service (INS)[2] agents

20   arrested Petitioner after they observed him at the airport handing what appeared to be

21   airline tickets to suspected illegal aliens.  (Doc. 7, Ex. 1.)[3]  Petitioner identified himself

22   as "Leonel Cano-Mendoza" and provided the agents an Arizona identification card and

23

24   _____

25        [2]   Prior to 2003, immigration offenses were handled by INS, but Congress
     abolished this agency and transferred most of its functions to the Department of
26   Homeland Security (DHS) and its subagency, Immigration and Customs Enforcement
     (ICE).  *See United States v. Reyes-Bonilla,* 671 F.3d 1036, 1041 n.2 (9th Cir. 2012)
27   (citing Homeland Security Act of 2002, §§ 441, 471; 6 U.S.C. §§ 251, 291).

28        [3]   Exhibits 1 through 6 to the Government's Response to the Petition for Error
     *Coram Nobis* (Doc. 7, Exs. 1-6) are located at dockets 7-1 through 7-6.  Exhibit 1 is the
     complaint and affidavit filed in the 1995 criminal matter.

- 2 -

1   driver's license with that name.  (Doc. 7, Ex. 4 at 7.)[4]   Petitioner told the agents that he

2   was an LPR, but they were unable to find any records indicating that Leonel Cano-

3   Mendoza was a legal resident.  (*Id.*)   They determined that Petitioner was eligible for

4   voluntary removal to Mexico, which he accepted, and he was removed on January 17,

5   1995.  (Doc. 7, Ex. 1 at 1, and Ex. 4 at 7.)

6        A few days later, on January 20, 1995, Petitioner's wife, Maria Cano-Mendoza,

7   reported to INS agents that Petitioner had returned to Phoenix and resumed his alien

8   smuggling activities.  (Doc 7, Ex. at 2, Ex. 4 at 20-23.)[5]   INS agents began surveillance

9   and arrested Petitioner on January 31, 1995 after observing him transporting fifteen

10  illegal aliens to the airport.  (Doc. 7, Ex. 1 at 2-5; Ex. 4 at 16.)   Petitioner told the agents

11  that he entered the United States illegally on January 20, 1995, and he admitted that he

12  was transporting illegal aliens.  (Doc. 7, Ex. 1 at 5.)   Petitioner identified himself to

13  agents as Leonel Cano-Mendoza and stated "several times" that Luis Cano-Mendoza was

14  his brother.  (Doc. 7, Ex. 4 at 19.)   Petitioner asserts that he was a LPR at the time of his

15  January 20, 1995 entry into the United States and his January 31, 1995 arrest.  (Doc. 1,

16  Ex. B.)[6]

17       On February 1, 1995, the government filed a complaint against Petitioner,

18  identifying him as "Leonel Cano-Mendoza AKA Luis Manuel Cano-Mendoza," and

19  charging him with transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B) and

20  (C), a felony offense.  (Doc. 7, Ex. 1.)   Pursuant to a plea agreement, Petitioner agreed to

21  plead guilty to an information charging him with entering the United States without

22  inspection, a misdemeanor, in violation of 8 U.S.C. § 1325(a), and the government

23  agreed to dismiss the felony § 1324 charge.  (Doc. 7, Ex. 2 at 1-2.)

24

25  _____

26       [4]  Exhibit 4 is the transcript of the February 6, 1995 sentencing hearing.

27       [5]  Exhibit 2 is the plea agreement, which Petitioner signed on February 3, 1995.

28       [6]  Exhibit B is a photocopy of Petitioner's Resident Alien card, which lists his
    name as Luis M. Cano-Mendoza.

1    Petitioner signed his name on the plea agreement as Leonel Cano-Mendoza.  (*Id.*)

2    In the plea agreement, Petitioner admitted that he was not a citizen of the United States

3    and that he had entered the United States without inspection on January 20, 1995.  (*Id.*)

4    At the change of plea hearing, Petitioner stated his name, under oath, as Leonel Cano-

5    Mendoza.  (Doc. 7, Ex. 3 at 8.)[7]  He admitted that he had entered the United States

6    "through a hole" and that he knew was entering the United States illegally.  (*Id.* at 3-4.)

7    At the sentencing hearing, he again admitted that he entered the United States illegally

8    "through a tunnel which is the drainage that carries waste and everything."  (Doc. 7, Ex. 4

9    at 26.)

10    At the sentencing hearing, the government presented extensive evidence through

11    the testimony of an INS agent to establish that Petitioner's true name was Luis Cano-

12    Mendoza and that Leonel Cano-Mendoza was his brother's name.  (*Id.* at 5-23.)  In his

13    testimony, the agent described the name and identification cards that Petitioner provided

14    when he was arrested, that another agent had reviewed Petitioner's photograph and

15    identified him as Luis Cano-Mendoza, and that Petitioner's wife had identified him as

16    Luis Cano-Mendoza and told agents that he was using his brother's name. (*Id.* at 9-11,

17    18-23.)  At the conclusion of the sentencing hearing, the government argued "it's clear

18    that Mr. Cano-Mendoza has used the name Leonel and Luis.  And it's our contention that

19    his real name is Luis."  (*Id*. at 24.)

20    Throughout the sentencing hearing, defense counsel maintained that his client was

21    Leonel, not Luis.  (*Id.* at 26-30.)  He argued to the Court that "about this false name

22    stuff[,] Leonel has come clean and said, I'm Leonel, this is my name.  I have a brother

23    named Luis." (*Id.* at 28.)  He further argued that Petitioner "claimed he was Leonel from

24    the start, . . . he never claimed to be Luis."  (*Id.*)  Finally, he argued that "whether or not a

25    false name has been used, that's something that's not unusual when people cross over and

26    try to remain in the country."  (*Id.* at 29.)

27

28

[7]  Exhibit 3 is the transcript of the February 3, 1995 change of plea hearing.

- 4 -

1    The parties were addressing Petitioner's identity in the context of sentencing to
2    determine if he was the person who was arrested on August 26, 1994 for transporting
3    illegal aliens. (*Id.* at 10-11, 28.)  This information was significant because the parties had
4    agreed that the government could argue that the Court should consider any past arrests in
5    determining the appropriate sentence. (Doc. 7, Ex. 3 at 5-6.)

6    The Court sentenced Petitioner to ninety days' incarceration and dismissed the
7    original complaint.  (Doc. 7, Ex. 4 at 32.)  Petitioner did not appeal his conviction or
8    sentence to the Ninth Circuit and did not file a motion to vacate or set aside his sentence
9    under 28 U.S.C. § 2255.

10   On May 5, 1995, an immigration judge (IJ) ordered Petitioner removed to Mexico.
11   (Doc. 1, Ex. E.)[8]   The order of removal listed Petitioner's name as Leonel Cano-
12   Mendoza, but it listed Petitioner's A-file number.  (Doc. 1 at 3.)  Petitioner asserts that, a
13   few months after his removal, his family told him that his LPR card had been renewed
14   and therefore he believed that INS had resolved his immigration status.  (Doc. 1 at 3-4,
15   Ex. F at ¶10.)[9]  Petitioner further asserts that he used his renewed LPR card to enter the
16   United States with inspection in 1996 and that he traveled between the United States and
17   Mexico. (*Id.* at ¶¶ 11-13.)

18   On January 11, 2013, DHS reinstated Petitioner's May 5, 1995 order of
19   deportation (Doc. 1, Ex. G),[10] and Petitioner obtained an administrative stay of removal.
20   (Doc. 1 at Ex. H.)[11]  Petitioner moved to reopen his removal proceedings and the IJ
21   denied the motion. (Doc. 7, Ex. 5.)[12]  Petitioner appealed the IJ's denial of his motion to
22   reopen to the Board of Immigration Appeals (BIA); the BIA dismissed his appeal.

---

24   [8]  Exhibit E is the IJ's May 5, 1995 removal order.

25   [9]  Exhibit F is Petitioner's Declaration in Support of *Coram Nobis*.

26   [10] Exhibit G is the Notice of Intent/Decision to Reinstate Prior Order.

27   [11] Exhibit H is Petitioner's Application for Stay of Removal.

28   [12] Exhibit 5 is the IJ's May 1, 2013 Order denying Petitioner's motion to reopen
     the 1995 deportation proceedings.

- 5 -

1  (Doc. 7, Ex. 6.)[13]  On July 12, 2013, Petitioner filed the pending Petition for Writ of Error

2  *Coram Nobis*.  (Doc. 1.)

3  **III.    The Writ of Error *Coram Nobis***

4         "The writ of error *coram nobis* affords a remedy to attack a conviction when the

5  petitioner has served his sentence and is no longer in custody."  *Estate of McKinney v.*

6  *United States*, 71 F.3d 779, 781 (9th Cir. 1995).  "The writ provides a remedy for those

7  suffering from the 'lingering collateral consequences of an unconstitutional or unlawful

8  conviction based on errors of fact' and 'egregious legal errors.'"  *United States v.*

9  *Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989) (quoting *Yasui v. United States*, 772 F.2d

10  1496, 1498-99, n.2 (9th Cir. 1985)).  The writ of error *coram nobis* allows a court to

11  vacate its judgment when an error of "the most fundamental character" has occurred that

12  causes the "proceeding itself [to be] rendered 'invalid.'"  *McKinney*, 71 F.3d at 781

13  (citing *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)).  The Supreme

14  Court and Ninth Circuit have "long made clear that the writ of error *coram nobis* is a

15  highly unusual remedy, available only to correct grave injustices in a narrow range of

16  cases where no more conventional remedy is applicable."  *United States v. Riedl*,

17  496 F.3d 1003, 1005 (9th Cir. 2007); s*ee also United States v. Morgan*, 346 U.S. 502,

18  511 (1954).

19         In the Ninth Circuit, a petitioner seeking *coram nobis* relief must establish that:

20  "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the

21  conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case

22  or controversy requirement of Article III; and (4) the error is of the most fundamental

23  character."  *Hirabayashi*, 828 F.2d at 604.  Because these requirements are conjunctive, a

24  petitioner must establish all of these requirements, and failure to satisfy any one

25  requirement is fatal to the petition.  *See Matus-Leva v. United States*, 287 F.3d 758, 760

26  (9th Cir. 2002).

27

28         [13]  Exhibit 6 is the BIA's October 8, 2013 Order dismissing Petitioner's appeal
from the IJ's decision.

1

### A.   Availability of a More Usual Remedy

2    Petitioner is no longer in custody for the illegal entry conviction and so he is

3 ineligible for relief under 28 U.S.C. § 2255.  *United States v. Kwan*, 407 F.3d 1005, 1012

4 (9th Cir. 2005) (finding that petitioner demonstrated that a more usual remedy was

5 unavailable because he was not in custody and, thus, was ineligible for relief under

6 28 U.S.C. §§ 2241 or 2255), *abrogated on other grounds by Padilla v. Kentucky*,

7 559 U.S. 356 (2010).  Petitioner has not addressed whether any other remedy may be

8 available, such as an appeal of the BIA's decision.

9    Respondent asserts that Petitioner has an alternative remedy available because he

10 could appeal the BIA's decision denying his petition to reopen his immigration case.

11 (Doc. 7 at 4.)  However, Respondent has not demonstrated that such an appeal is a viable

12 option for Petitioner to achieve the specific relief that he requests in the pending petition

13 ─ an order vacating his 1995 conviction for illegal entry.  (Doc. 1 at 11.)  In addition, in

14 denying Petitioner's attempts to reopen his removal proceedings, the BIA and the IJ

15 noted that Petitioner's 1995 conviction in this Court "would have to be set aside before

16 he could claim that he is not subject to deportation."  (Doc. 7, Ex. 6 at 2; Ex. 5 at 2.)

17 Therefore, the Court concludes that Petitioner does not have an alternative remedy

18 available for the relief that he seeks and, therefore, he has established the first

19 requirement for *coram nobis* relief.

20

### B.   Failure to Attack Conviction Earlier

21    Petitioner must also show that there is a valid reason why he did not challenge his

22 1995 conviction earlier.  There is no statute of limitations on filing a petition for writ of

23 error *coram nobis*.  *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994).  Rather,

24 courts require "*coram nobis* petitioners to provide valid or sound reasons explaining why

25 they did not attack their sentences or convictions earlier."  *Kwan*, 407 F.3d at 1012; *see*

26 *United States v. Njai*, 312 Fed. App'x 953, 954 (9th Cir. 2009) (stating that "[t]he law

27 does not require a petitioner to challenge his conviction at the earliest opportunity,

28 however, it does require that he have a legitimate reason for not doing so.").

1         "Few courts have expounded on what constitutes a 'valid' or 'sound' reason, but

2   the writ has been denied when a petitioner provides no explanation or appears to be

3   abusing the writ and when the respondent demonstrates prejudice as a result of the

4   delay." *United States v. Hubenig*, 2010 WL 2650625, \*2 (E.D. Cal. July 1, 2010) (citing

5   *Kwan*, 407 F.3d at 1013). "In making a determination of prejudice, the effect of the delay

6   on both the government's ability to respond to the petition and the government's ability

7   to mount a retrial are relevant."[14]   *Id.* at 48.

8         Petitioner asserts that he did not know that he needed to collaterally attack his

9   "erroneous 1995 illegal entry conviction" because the INS renewed his LPR card after his

10  deportation and so he reasonably believed that his "immigration problem had been

11  resolved by the INS, and the courts, and that he had retained his status as a Lawful

12  Permanent Resident." (Doc. 1 at 6.)  He claims that he did not realize that he needed to

13  attack his 1995 conviction until his order of deportation was reinstated in January 2013.

14  (*Id.*)

15        Petitioner, however, does not state when he was actually removed from the United

16  States.  He asserts only that he was removed and then "a few months after my removal

17  from the U.S. my family informed me that my LRP card had been renewed by the INS."

18  (Doc. 1, Ex. F at ¶ 10.)  In contrast, the Notice of Intent/Decision to Reinstate Prior Order

19  states that the IJ ordered Petitioner's removal on May 5, 1995, and he was removed on

20  July 28, 1997. (Doc. 1, Ex. G.)  It also states that he illegally entered the United States a

21  few days after his removal, on August 1, 1997. (*Id.*)  These dates are inconsistent with

22  Petitioner's assertion that he entered the United States, with inspection, after his removal

23  and using his renewed LPR card in 1996. (Doc. 1, Ex. F at ¶ 11.)

24        Petitioner's assertion that he received a renewed LPR card *after* he was removed

25  from the United States is also inconsistent with the reasons stated for seeking a stay on

26  

27        [14]   Respondent does not argue prejudice as a result of Petitioner's delay in
    attacking his 1995 conviction, but the Court notes the inherent difficulty and likely

28  prejudice to the government by any attempt to retry this matter after a delay of more than
    eighteen years.

1    his 2013 Application for a Stay of Deportation or Removal.  (Doc. 1, Ex. H.)   That

2    documents states that Petitioner "was ordered deported on May 5, 1995 in El Paso,

3    Texas.  [He] used his brother's name, Leonel Mendoza Cano, during the course of the

4    proceedings, and he did not affirmatively disclose his LPR status.  [He] subsequently re-

5    entered the United States several times using his [LPR] card, *which was reissued while he*

6    *was in proceedings*."  (*Id.* (emphasis added).)   Therefore, the Court rejects Petitioner's

7    assertion that he believed that INS had resolved his immigration issues because he had

8    received a renewed LPR card.

9         Respondent argues that Petitioner has not established a valid reason for waiting

10    eighteen years to attack his 1995 conviction.  (Doc. 7 at 4.)   Respondent suggests that

11    Petitioner did not attack his 1995 conviction earlier because he believed that conviction,

12    which was in his brother's name, would not affect his immigration status.  (*Id.*)   The

13    Court agrees.   The record of the 1995 criminal matter in this Court establishes that

14    Petitioner repeatedly asserted, in writing and under oath, that he was Leonel Cano-

15    Mendoza. (Doc. 7, Ex. 2, Ex. 3 at 8.)  In Petitioner's presence, and without any effort by

16    Petitioner to clarify his identity, Petitioner's defense counsel argued that he was Leonel

17    Cano-Mendoza.  (Doc. 7, Ex. 4 at 26-30.)   Additionally, Petitioner does not explain for

18    why he did not clarify his identity during the 1995 removal proceedings.[15]

19         Therefore, the Court concludes that Petitioner did not earlier challenge his 1995

20    conviction because he believed the conviction, under his brother's name, would not affect

21    his immigration status.   Petitioner decided to attack his conviction only after DHS

22

23

24

---

25         [15]   In denying Petitioner's motion to reopen his deportation proceedings, the IJ
26    noted that Petitioner "stood silent before two legal bodies" [the district court in the 1995
      criminal matter and the IJ in the 1995 removal proceedings] and did not clarify his
27    identity or his LPR status. (Doc. 7, Ex. 5 at 2.)  The BIA reports that Petitioner explained
      that he did not clarify his identity before the district court or the IJ because he was afraid
28    he would lose his LPR status and be charged with using a false name. (Doc. 7, Ex. 6 at
      1.)   This is inconsistent with the explanation Petitioner now offers this Court that he
      believed his immigration issues were resolved.

1    reopened removal proceedings.[16]   *See Matus-Leva,* 287 F.3d at 760 (petitioner must

2    establish all of the requirements for *coram nobis* relief.)  Petitioner has not established a

3    valid reason for not seeking relief earlier and, therefore, his petition fails.  Nonetheless,

4    the Court will address the remaining requirements for *coram nobis* relief.

5            **C.    Adverse Consequences**

6            Petitioner must also demonstrate that, as a result of his conviction, he has

7    experienced adverse consequences that are sufficient to satisfy the case or controversy

8    requirement of Article III.   Petitioner is subject to deportation because of his 1995

9    conviction under 8 U.S.C. § 1325.  Therefore, he has established the adverse

10   consequences requirement for *coram nobis* relief.  *See Kwan*, 407 F.3d at 1014 ("It is

11   undisputed that the possibility of deportation is an 'adverse consequence' of [petitioner]'s

12   conviction sufficient to satisfy Article III's case or controversy requirement."); *see also*

13   *Park v. California*, 202 F.3d 1146, 1148 (9th Cir. 2000) ("because he faced deportation,

14   [petitioner] suffers actual consequences from his conviction.")

15           **D.    Fundamental Error**

16           Finally, to be entitled to *coram nobis* relief, Petitioner must establish that a

17   fundamental error occurred.  *See Hirabayashi*, 828 F.2d at 604.  He asserts fundamental

18   error because he received ineffective assistance of counsel and was denied due process

19   under the Fifth Amendment.

20                   **1.    Ineffective Assistance of Counsel**

21           In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court

22   articulated a two-part test to determine whether a defendant received ineffective

23   assistance of counsel.  First, counsel's performance must be deficient.  *Id*.  This requires a

24   petitioner to demonstrate that counsel made errors so serious so as to not function "as the

25   'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  The relevant question

26

27   ───────────────

28           [16]   Similarly, the BIA concluded that Petitioner had failed to explain why he
     waited until 2013 to request reopening of his deportation proceedings.  (Doc. 7, Ex. 6 at
     2.)

- 10 -

1    under this prong is whether counsel's performance was "reasonable[ ] under prevailing

2    professional norms." *Id.* at 688.

3        Second, a petitioner must demonstrate that counsel's deficient performance

4    prejudiced the defense. *Id.* at 687.  This requires a petitioner to show that counsel's

5    errors were so egregious that they deprived him of a "fair trial, a trial whose result is

6    reliable." *Id.* at 687.  "An error by counsel, even if professionally unreasonable, does not

7    warrant setting aside the judgment of a criminal proceeding if the error had no effect on

8    the judgment." *Id.* at 691.  Accordingly, a petitioner must establish, "that there is a

9    reasonable probability that, but for counsel's unprofessional errors, the result of the

10   proceeding would have been different.  A reasonable probability is a probability

11   sufficient to undermine confidence in the outcome." *Id.* at 694.  To establish ineffective

12   assistance of counsel, a petitioner must establish both parts of the *Strickland* test; if a

13   petitioner fails to satisfy one part of the test, his claim fails.

14       Petitioner argues that his counsel failed to properly investigate his identity and

15   immigration status and that, because of this deficient performance, counsel failed to

16   discover that the government "had knowledge of petitioner's true immigration status, as

17   an LPR, and his true identity." (Doc. 1 at 8.)  Petitioner's argument is refuted by the

18   record of the 1995 criminal matter in this Court.  The record establishes that the

19   government was aware of Petitioner's identity and argued to the Court that Petitioner was

20   Luis Cano-Mendoza, not Leonel Cano-Mendoza. (Doc. 7, Ex. 4 at 24.)  Thus, there was

21   no reason for defense counsel to conduct additional investigation of Petitioner's identity

22   and immigration status in an effort to show that the government was aware of Petitioner's

23   identity.  Indeed, in an effort to minimize Petitioner's criminal history and obtain a more

24   favorable sentence, defense counsel argued, without any clarification from Petitioner, that

25   Petitioner was Leonel Cano-Mendoza. (*Id*. at 26-30.)  Counsel's performance was not

26   deficient and Petitioner's argument that he received ineffective assistance of counsel

27   fails, but the Court nonetheless addresses Petitioner's claim of prejudice.

28

1    Petitioner argues that he was prejudiced by counsel's deficient performance

2    because he asserts that if counsel had discovered his true identity and LPR status, he

3    would not have been convicted. (Doc. 1 at 9.)  Petitioner's argument fails because even

4    if he was an LPR in 1995, and that information had been presented to the Court, that

5    status would have been immaterial to the charge that he entered the United States without

6    inspection, in violation of 8 U.S.C. § 1325(a).  Under § 1325(a), it is a crime for any alien

7    to "enter[] or attempt[] to enter the United States at any time or place other than as

8    designated by immigration officers . . . ."  8 U.S.C. § 1325(a).  Petitioner admitted that he

9    was an alien and entered the United States through a "hole" or "drainage pipe," without

10   inspection.  (Doc. 7, Ex. 2; Ex. 3 at 3-4, Ex. 4 at 26.)  Thus, Petitioner admitted to the

11   elements of the offense.

12   As an LPR, Petitioner was an alien and he was required to enter the United States

13   at a place designated by immigration officials. [17]  *See United States v. Figueroa-Corrales*,

14   1988 WL 35757, at *1-2 (9th Cir. Apr. 13, 1988) (8 U.S.C. § 1325(a) "applies to

15   permanent resident aliens as well as illegal aliens") (citing *Gunaydin v. U.S. I.N.S.*,

16   742 F.2d 776 (3d Cir. 1984)); *Leal-Rodriguez v. INS*, 990 F.2d 939, 946-48 (7th Cir.

17   1993) (a permanent resident is deportable for entering the United States without

18   inspection).  Therefore, Petitioner's conviction under § 1325(a) was proper because he

19   entered the United States at a place other than as designated by immigration officers.

20   Accordingly, Petitioner has not shown that, but for counsel's failure to investigate

21   his true identity and ascertain his LPR status, there is a reasonable probability that the

22   outcome of his 1995 prosecution would have been different.  Therefore, he has not

23   established a fundamental error entitling him to *coram nobis* relief.  *United States v.*

24

25       [17] Title 8 U.S.C. § 1101(a)(3) defines alien as "any person not a citizen or national
of the United States."  There is no dispute that Petitioner is not a United States citizen or

26   national. (Doc. 1 at 2.)  *See Koyomejian v. Mukasey*, 268 Fed. App'x 613, 614-15 (9th
Cir. 2008) (petitioner was not a "national of the United States" within the meaning of

27   § 1101(a)(3) because he had not completed the naturalization process); *Hernandez v.
Ashcroft*, 114 Fed. App'x 183, 188 (6th Cir. 2004) ("permanent resident alien status

28   (through marriage or otherwise) does not establish United States citizenship or
nationality").

1     *Ramirez-Davilla*, 46 F.3d 1148 (9th Cir. 1995) (denying *coram nobis* relief to petitioner,

2     an LPR, who entered the United States by climbing through a hole in a fence and later

3     pled guilty to violating 8 U.S.C. § 1325(a)(1)).

4     **2.  Due Process**

5     Petitioner also argues that he was denied due process under the Fifth Amendment

6     because the government prosecuted him for illegal entry under 8 U.S.C. § 1325(a)(1),

7     even though it knew, or had reason to know, he had LPR status.  (Doc. 1 at 10.)  As set

8     forth above, because § 1325(a)(1) applies to permanent resident aliens as well as illegal

9     aliens, Petitioner's prosecution under that statute did not violate his due process rights.

10     *See Figueroa-Corrales*, 1988 WL 35757, at \*1-2.  Thus, Petitioner has failed to establish

11     fundamental error in the 1995 criminal matter in this Court.

12     **IV.  Conclusion**

13     Petitioner has not established that he entitled to *coram nobis* relief.  Specifically,

14     he has not established a valid reason for the delay in attacking his conviction and has not

15     established that his conviction was invalid.  Therefore, the Petition should be denied.

16     Accordingly,

17     **IT IS RECOMMENDED** that the Petition for Writ of Error *Coram Nobis*

18     (Doc. 1) be **DENIED**.

19     **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

20     leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not

21     made a substantial showing of the denial of a constitutional right.

22     This recommendation is not immediately appealable to the Ninth Circuit Court of

23     Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

24     Procedure, should not be filed until the district court enters its judgment.  The parties

25     have fourteen (14) days from the date of service of a copy of this recommendation to file

26     specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

27     6(a), 6(b), 72.  Thereafter, the parties have fourteen (14) days to file a response to the

28     objections.  Failure to timely file objections to the Magistrate Judge's Report and

1    Recommendation may result in the acceptance by the district court without further

2    review. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure

3    to timely file objections to any factual determinations of the Magistrate Judge will be

4    considered a waiver of a party's right to appellate review of the findings of fact in an

5    order of judgment entered pursuant to the Magistrate Judge's recommendation.  *See*

6    Fed. R. Civ. P. 72.

7        Dated this 26th day of March, 2014.

8

9    _____

10                    Bridget S. Bade
                United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -